Ms. Steenholt, we'll hear from you when you're ready. May it please the Court. The warrantless search of Kimberly Hines' trailer violated her Fourth Amendment rights. The District Court found a limited scope of consent to search Hines' trailer, specifically to find and arrest Chuck Oman. While arresting Oman, the District Court determined the firearm was found in Plainview. The only question on appeal is whether the Court clearly erred when it determined that Sgt. Ellis' found the gun in Plainview during Oman's arrest. The District Court clearly erred in finding Sgt. Ellis' testimony credible because the testimony was internally inconsistent, incoherent, implausible, or contradicted by objective evidence. First, Sgt. Ellis claimed that he saw the shotgun while he was arresting Oman, yet he did not mention it to any of the other officers in the room. That's implausible because Oman was an individual who was wanted for a violent assault. The previous night he had fractured somebody's facial bones. He was in a state of fleeing as he was absconding from parole. One of the officers testified that he appeared to be high when they came upon him. He had made threats of self-harm, that he would kill himself before returning to prison. And the Watertown Police Department knew him very well based on a prior 12-hour standoff that they had with this gentleman. So it is just implausible that if there was a firearm in the room, that Sgt. Ellis would have kept that secret and not have pointed that out to the other officers that were present. Now remind me, what did he say about that, Ellis? That he, about whether or not he pointed out that there was a firearm? What did he say about that? Yeah, you say it's implausible that he wouldn't have told the other officers. But what did he and the other, remind me what he and the other officers said about... So Sgt. Ellis stated that he did not recall whether he pointed it out or not. We heard testimony. There were two other officers in the room during the arrest, and we only heard from one of them, Detective Kinnunen, and that was at the state suppression hearing. And he said that Sgt. Ellis never pointed that out. When you say it's, well, first of all, there's no evidence that he didn't point it out to the second officer because that officer didn't testify and Ellis said he didn't recall. Yes. All right. But we do have that second officer that does state, yeah. Second... So Ellis said he didn't, or there's no evidence he pointed it out, and then he went, remind me, when he seized it in the chronology? Sure, so he... Was it after the suspect was taken out of the room? When the gun was actually seized? Yeah. Yes, so Sgt. . . He went back and got it? Yes. Yeah. Well, another officer went in there and seized the weapon. I see. Yeah, so... Has Ellis told him it was in there? Nope. The other officer, it was Detective Ingalls passes Sgt. Ellis in the hall while Sgt. Ellis is removing Oman, and Detective Ingalls enters the room and he says that he seized the firearm in plain view, and he seized it at that time. But our position is that that lawful window, yeah, is closed. You say nobody saw it until Ingalls saw it and Ingalls couldn't be in there. But if Ellis saw it, then they had probable cause at that moment. Correct. But our position is that he did not see it at that point. Well, how did Judge Kornman get it wrong? I guess it was the magistrate judge. Yeah, it was the magistrate judge that then... Who heard the witnesses. Yes. You couldn't convince the magistrate judge that he was incredible, that Ellis was not credible? Not at the magistrate court, but that's why we have you three here. Well, we don't typically make credibility findings, so that's the problem. Sure, yeah. This is reviewed for clear error, and we believe that the testimony was so internally inconsistent and implausible that we meet that burden for clear error. And further, with Sgt. Ellis, I'll give you more reasons why Sgt. Ellis' testimony is... Before you go there, I wanted to follow up quickly on the fact that Ingalls saw the gun. I mean, I know you're talking about the timeline and that cast out, but doesn't Ingalls kind of corroborate Ellis? I mean, I think it becomes really hard to take down a credibility finding, as Judge Colleton might be suggesting, when you have two separate officers saying, I saw it in plain view, which is really what this case is all about. How do we get around that in your view? Is it totally the timeline and the chronology? It is the timeline. I will state that they did find that Detective Ingalls' testimony was inconsistent. So at the state hearing, he said that he didn't find... He wasn't in the room for the arrest. And then at the federal hearing, Detective Ingalls states, indeed, he was in the room at the arrest. So there is already this implicit credibility finding that we have against one of the officers. So to the extent that Detective Ingalls' testimony bolsters Sgt. Ellis', well, he already kind of has a black mark against inconsistencies within his own testimony. And further, Sgt. Ellis has other inconsistencies with his testimony. Between the state... What were the other things you wanted to mention about why we shouldn't believe Ellis? Correct. Yeah. Yep. So Sgt. Ellis said he was the only one there for the arrest who said that he saw the shotgun. Again, there were two other officers there. We addressed that. One didn't say that they saw it. We did have Probation Officer Connie Johnson, who comes into the bedroom after Oman was removed, and she's coming there to look for evidence of contraband, that Oman was living there. So she's searching around, and she didn't see a weapon in plain view either. Sgt. Ellis never mentioned the shotgun at the state suppression hearing. He does not write a report to document the discovery of the weapon. But another point that's important is the inconsistencies between Sgt. Ellis' state suppression hearing and his federal one. He said at the federal hearing that Detective Ingalls, again, was in the room with him when he was arrested, but the district court found that Detective Ingalls was in the hallway. And this is key because Detective Ingalls stated that he was the first one who saw the shotgun. But if the district court found that Oman and Ingalls passed in the hallway while Oman was departing, this gets to the timeline issue, and Ingalls was entering in the room, then Ingalls being the first one to see the weapon is a problem, and that's what Ingalls documented in his report following the incident. And it's a problem because it would have, again, it's a timeline issue. It would have been outside the lawful window of time for the plain view exception to apply. And one other inconsistency between Sgt. Ellis' testimony in the state and the federal hearing is that he stated at the state hearing that he walked Mr. Oman out of the residence after he was arrested, and he didn't return into the residence. But then at the federal hearing, he states he walked him out, and then he did return back into the residence. So for these reasons... Do Ingalls and Ellis agree on where the gun was located? Yes. Remind me how they described what it was and how the stock could be seen. Yeah, so it was in the closet on a shelf, and Sgt. Ellis says that he sees the buttstock of it, and Detective Ingalls stated that he saw it had blue shells, which was unique. He had never seen blue shells before. Open closet? Yep, it didn't have any doors on it. And it was eye-level, right? It was above a bag of some sort or a gym bag or something of that nature? Duffel bag was in the fax, but that was on the floor. But it was a higher shelf. The pictures that entered into the exhibit don't really paint a great picture of how high it was, but it was elevated. I'm going to reserve the remainder of my time. What happened in the state court proceeding? With Mr. Oman? You said there was a state hearing. Was that in a state criminal case? That was for Mr. Oman. Yeah, that was dealt with Mr. Oman's proceedings that resulted from this incident, not from Ms. Hines. She was never charged in state court? Not that I know of. Right. You wish to save time for a little? I do wish to save time. Very well, you may. Ms. Momenga, we'll hear from you. May it please the court, counsel. My name is Jennifer Momenga. I'm an assistant United States attorney with the District of South Dakota, and I'm here today to ask the court to affirm the conviction as to Kimberly Hines.    of Kimberly Hines, but that it is in favor of the conviction of Kimberly Hines. Ms. Hines gave consent to law enforcement to search her trailer for Mr. Oman, and that during that search, officers saw in plain view the firearm in question in this case located in a closet in a back bedroom. Defense has conceded today that Ms. Oman did consent to a search of her residence for Mr. Oman, and we are ultimately then discussing the issue of whether or not law enforcement did see that firearm in question in plain view in that back bedroom. Defense today is asking this court to do what it has held many times over that it does not do often, which is to reverse a lower court's credibility finding of a witness. The Eighth Circuit has held time and time again that the trier of fact is really the best place to determine whether or not a witness was credible during their testimony, and that those determinations are virtually unassailable on appeal. Here we have two law enforcement officers who testify to seeing this firearm in plain view. That would be Sergeant Ellis and Detective Ingalls. What about the timeline, the fact that Ingalls testified differently, and so we already kind of have a problem with his testimony? I would point the court to page 94 of the transcript in the motion hearing where Detective Ingalls stated that he did see that firearm in plain view in the closet at the time that Mr. Oman was being arrested. So that was not after an arrest. That was not a subsequent entry. It was during that arrest. But I thought the district court did not credit that. The district court did not specifically rule regarding Mr. Ingalls or Detective Ingalls' finding. It did footnote that, but did not say specifically that they discredited the finding, noted that there was some inconsistency between what he testified to at the state court hearing regarding Mr. Oman versus what was testified to regarding the conduct of Ms. Hines in the motions hearing before the magistrate court. Right, so why do you think that page 94 helps you then? That, I believe, is the first time that Detective Ingalls is questioned very directly about exactly where he is during each step of what's going on in the case. Right, I just meant, you're saying we should defer to the district court on this, but the district court didn't rely on Ingalls and didn't find, you say it didn't find him not credible, but he certainly didn't find it credible. I agree that the district court did rely certainly more heavily on Sergeant Ellis' testimony than it did on that of Detective Ingalls. However, I believe that Detective Ingalls' testimony does serve to corroborate what Sergeant Ellis did testify to, which is that in that back bedroom in plain view during the time of the arrest, that shotgun was readily visible to law enforcement in that room. So your argument is just because the district court found Ingalls incredible or not credible, I guess is the better way of saying it, on one issue doesn't mean that there's a broad credibility finding that ends up destroying all of his testimony. That is correct, Your Honor. When you look at the total record and why I think that that footnote gets dropped is because of that state court hearing transcript. And when we're looking at a state court hearing transcript, they're really not examining the same issues that we're examining at the magistrate court level. That was a state court suppression hearing transcript regarding Mr. Oman. I am not aware of whether or not he was charged with possession of that firearm in state court. I believe that that was ultimately related to the drug paraphernalia also located in that room. Yeah, but the important thing isn't whether Ingalls saw the gun, it's when he saw the gun. I agree. And there's no finding that he saw it at the time of the arrest. I agree that the magistrate court report and recommendation doesn't credit Ingalls as being the testimony that carries the day on that issue. Rather, it does look to Sergeant Ellis' apparent and ready observation of that firearm, the butt of that shotgun hanging out of that, being visible from that closet shelf at eye level to Sergeant Ellis at the time of that arrest. And that's where it was found? Yes, that is. In the subsequent search? That is correct, Your Honor. So it was where Ellis said it was going to be? Yes, that is correct. I would also note that the fact that Sergeant Ellis did not mention this to other law enforcement officers doesn't mean that he didn't see it. That in and of itself does not lend itself to a lack of credibility as to his finding. He was not questioned at all regarding an observation of the firearm during the state court proceeding, which is why there is, for the first time, his mention of the firearm in front of the magistrate court. There were no questions posited to him by either the prosecution or the defense at the state court level as to a firearm being located in that room at all. Ultimately, we are asking this court to uphold the determination of the magistrate court as affirmed by the district court, and we are asking that the conviction as to Ms. Hines be affirmed by this court. What about inevitable discovery? Did the officers testify at all about what they would have done? There was some limited testimony about getting a search warrant. What was the testimony? Very, very scant that if we couldn't have gotten in with consent, we would have applied for a search warrant. Ultimately, I think inevitable discovery does not win the day for us because we do not have an independent line of investigation going at the same time.  that say that's a requirement. Yes, and for us, that was a concern. I question whether that's correct, but I guess that is the precedent. Yes, and following that precedent led us to not brief on that issue. That is a place where we did disagree with the district court's determination, ultimately. And if there are no other questions, I thank you for your time. Very well. Thank you for your argument. Thank you. Would you care to make rebuttal? Ms. Steinholt? Very well. You may. Thank you. We do feel that we meet the clear air standard. I know it's a difficult standard to meet, but again, we can meet it. It's not impossible to meet it. We have to show that it's internally inconsistent, incoherent, implausible, or contradicted by objective evidence. And for the reasons that I stated in the opening Sergeant Ellis' testimony, we believe meets that burden, especially with the implausibility of not stating for safety reasons, given the violent nature of Mr. Oman, why he would keep that a secret, that there's a firearm in the room and not notify anybody else that there is one. Can I ask you about Ingalls very quickly? Yes. It actually was something I was thinking about when Judge Shepard asked opposing counsel about this. Yeah. The shotgun was found exactly where, according to Ingalls, where Ellis said it was. There's no allegation that the shotgun was moved. And I understand the point. It's when he saw the gun. But is that actually true? Because if Ingalls later went into the room and saw it in the exact same place and there's no allegation it was moved, then doesn't that corroborate Ellis at least to some degree? And I understand there's other problems with Ingalls' testimony, which we've already discussed. So my question is, I guess, doesn't that kind of help the prosecution here? I don't believe so. And the reason being is because when Detective Ingalls could have easily just, when Sergeant Ellis did or did not return back to the residence, again, which was an inconsistency between the state and federal hearings, Detective Ingalls, they could have been seizing the weapon at that point and said, hey, we're taking photos of this, this is where it is. And Sergeant Ellis could have learned that information at that point. So I think in terms of Detective Ingalls' testimony, we can't give much to it. Did Ellis say he came back in? Was that in the federal hearing? Yes, in the state hearing. He took the suspect out and then returned? Yep, whereas in the state hearing, he said he just stayed out there and never returned back in the residence at all. But everybody agrees that Ingalls is the one who seized the gun? Well, Ingalls was the one who wrote a report after, an incident report after this event, and he says he's the first one that saw the shotgun. No, I said who seized it. Oh, seized it. That I am unsure about, but who specifically was the one who seized it. What you're saying now, Ingalls wrote a report where he said he was the first one to see it? Yes, that he was the first one to see the shotgun. Well, how does he know whether he was the first one to see it? Because nobody else had mentioned it? Yeah, yep. He says in a report, what does he exactly say? He says, so this is on Federal Transcript page 103. He said that just following the incident that he wrote a report afterward, Sergeant Ellis never did, but that Detective Ingalls did, and he stated that he was the first one who saw the shotgun in the report. Is the report in the record? I don't believe it is. So you're quoting from a transcript? Yes, where he, well, Detective Ingalls' testimony at the Federal Transcript where he is referring to his own report that he drafted and stating that he was the first one that saw the shotgun. All right, I understand. So in conclusion, the shotgun was obtained in violation of Hines' Fourth Amendment rights, and we request the court reverse the order denying the motion to suppress. Thank you. Thank you for your argument. The case is submitted, and the court will file an opinion in due course. Counsel may be excused. Thank you both.